Ryan M. Best, WSBA 33672
Jacob A. Mark, WSBA 54280
Michael Merkelbach, WSBA 55389
Best Law PLLC
905 W. Riverside, Suite 409
Spokane, WA 99201
Phone: (509) 624-4422
Fax: (509) 703-7957
ryan.best@bestlawspokane.com
jmark@bestlawspokane.com
mike.m@bestlawspokane.com
Attorneys for Plaintiffs

## IN UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RORY WINTERSTEEN and TERRI WINTERSTEEN, individually and the marital community thereof<br><br>Plaintiffs,<br><br>vs.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, a foreign limited liability Massachusetts Company,<br><br>Defendant. | NO.<br><br>**COMPLAINT FOR DAMAGES AND JURY DEMAND** |

Plaintiffs, by and through Ryan M. Best, Jacob Mark, and Michael Merkelbach of Best Law, PLLC complain of Defendant and allege as follows:

### I.    PARTIES, JURISDICTION, AND VENUE

1.1    Rory and Terri Wintersteen reside in the Eastern District of Washington.

1.2   At all times material hereto, Liberty Mutual Insurance Company ("Liberty Mutual"), a foreign limited liability Massachusetts company, does business in the state of Washington, including in the Eastern District of Washington.

1.3   Federal jurisdiction in this matter is proper under 28 U.S.C. § 1332 as Liberty Mutual is a Massachusetts company, Mr. and Mrs. Wintersteen are residents of Washington, and the amount in controversy in this matter exceeds $75,000.

1.4   The damage to the house, property, and belongings giving rise to this lawsuit, took place within the Eastern District of Washington and venue is thus proper within the Eastern District of Washington pursuant to 28 U.S.C. § 1391(b)(2).

## II.    FACTS

2.1   Plaintiffs re-allege the above paragraphs 1.1 through 1.4 verbatim.

2.2   Mr. & Mrs. Wintersteen own property in the Eastern District of Washington.

2.3   On August 21, 2016, a fire broke out and spread to Mr. and Mrs. Wintersteen's home and business located at 37437 Hart Rd. N., Davenport, WA 99122 (the "Residence").

COMPLAINT FOR DAMAGES
AND JURY DEMAND – 2

2.4   Mr. and Mrs. Wintersteen sustained a catastrophic loss of their home, personal and familial belongings, farm equipment, and farm animals.

2.5   Jeffrey Zimmerman was working for Marjorie Kloster in her dry wheat fields on August 21, 2016.

2.6   On August 21, 2016, Jeffrey Zimmerman was traveling through Ms. Kloster's wheat stubble field in a fuel truck.

2.7   The field was abundant with highly flammable grain dust.

2.8   The Wildland Fire Investigation Report concluded that the most probable cause of the fire originated from some combustible burning substance under Mr. Zimmerman's fuel truck that was stuck between the truck's bed and the catalytic converter.

2.9   The report eliminated every possible cause of the fire except for the fuel truck driven by Mr. Zimmerman in Ms. Kloster's wheat stubble field.

2.10  Mr. Zimmerman was acting under the control of Ms. Kloster, who had hired him to harvest the wheat field where the fire started.

2.11  The August 21, 2016 fire (the "Hart Fire"), caused Mr. and Mrs. Wintersteen to sustain the following damages to their Residence/business:

a.  The Residence was a complete loss;

b.  All personal belongings in the residence are a complete loss;

COMPLAINT FOR DAMAGES
AND JURY DEMAND – 3

c.  The 2005 Trailswest four horse slant load gooseneck with walk in tack room was a complete loss;

d.  The two-horse straight load horse trailer was a complete loss;

e.  A 1978 Chevrolet ¾ ton 4x4 pick-up was a complete loss;

f.  A 16' Diamond plate flatbed hay trailer and headache rack (bumper pull) was a complete loss;

g.  The fencing and corals at the residence/business were a complete loss;

h.  An estimate of $36,000.00 in tools were destroyed;

i.  An estimate of $13,000.00 for the shop replacement;

j.  A 2016 Polaris 50 cc four-wheeler was a complete loss;

k.  16'x24' out building was a complete loss;

l.  8'x16' out building was a complete loss;

m. 8'x12' out building was a complete loss;

n.  Gate opener, solar panel and battery were a complete loss;

o.  Eight market hogs with an average weight of 150 lbs. were killed;

p.  Three Berkshire breeding gilt with an average weight of 180 lbs. were killed;

q.  One Berkshire sow 1 ½ weeks from farrowing was killed;

r.  One Blue butt gilt one month from farrowing was killed;

s.  One 6-month-old heifer was killed;

t.  One 2-year-old bull was killed;

u.  2.5 tons of Alfalfa square bales were completely lost;

v.  13 tons of grass hay were completely lost;

w.  Case Manure Spreader was a complete loss;

x.  Mr. Wintersteen received injury to his right knee in the "clean-up" of the rubble left from the fire;

2.12  Liberty Mutual is Mr. and Mrs. Wintersteen's insurance company.

2.13  Mr. and Mrs. Wintersteen filed a claim with their insurer to recover what they could after the devastating loss.

2.14  Mr. and Mrs. Wintersteen were "first party claimants" as that term is defined in the Washington Unfair Claim Settlement Practices Regulation and Washington's Insurance Fair Conduct Act (IFCA), RCW 48.30.010(7) and RCW 48.30.015.

2.15  The Wintersteens did not fully recover from all they lost in the Hart Fire through their first-party claim with Liberty Mutual.

2.16  Mr. and Mrs. Wintersteen were not "made whole" as described in *Thiringer v American Motorists Ins. Co.*, 91 Wn.2d 216, 588 P.2d 191 (1978).

2.17  Mr. and Mrs. Wintersteen filed suit against the third-party tortfeasors that started the Hart Fire, Mr. Zimmerman and Ms. Kloster.

2.18  Coincidently, Mr. Zimmerman and Ms. Kloster in this action are insured by Liberty Mutual.

2.19  Neither Zimmerman nor Kloster, are parties to the Wintersteens' insurance contract with Liberty Mutual.

2.20  Ms. Kloster and Mr. Zimmerman answered the Wintersteens' complaint and asserted seven affirmative defenses.

2.21  The Wintersteens sent Liberty Mutual an Insurance Fair Conduct Notice asking that the non-insurance company defendants withdraw their affirmative defenses based upon Wintersteen's contract with Liberty Mutual.

2.22  The insurance company owes its policyholder a duty of good faith.

2.23  The insurance company owes a fiduciary duty to the policyholder. It has an obligation to tell the truth, to have a lawful purpose, to deal fairly with the policyholder, and to give equal consideration to the policyholder's interest as it does to its own.

2.24  The insurance company is prohibited from engaging in conduct toward its policyholder that is in any way unreasonable, frivolous, or unfounded.

2.25  The Unfair Claims Settlement Practices Regulation, found in chapter 284-30 of the Washington Administrative Code, imposes duties to insurance companies. Liberty Mutual owes those duties to Mr. and Mrs.

Wintersteen. Plaintiffs hereby incorporate, by reference, The Unfair Claims Settlement Practices Regulation.

2.26 Insurance industry standards in the State of Washington require Liberty Mutual to comply with the Unfair Claim Settlement Practices Regulation.

2.27 Without limitation, the Unfair Claim Settlement Practices Regulation provides that insurers:

a.  must disclose all pertinent benefits, coverages, or other provisions of an insurance policy under which a claim is presented;

b.  must acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c.  must adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d.  must not refuse to pay claims without conducting a reasonable investigation;

e.  must complete its investigation of the claim within 30 days after notification of the claim, unless the investigation cannot reasonably be completed within that time; and

f.  must notify the first party claimant whether the claim has been accepted or denied within 15 working days after receipt by the insurer of fully completed and executed proofs of loss.

2.28 To ensure compliance with legal and industry standards, insurance companies have a responsibility to properly train employees involved in claims-handling activity.

### III.   CAUSES OF ACTION

FIRST CAUSE OF ACTION: NEGLIGENT SUPERVISION

3.1   Plaintiffs re-allege the above paragraphs 1.1 through 2.28 verbatim.

3.2   Plaintiffs filed a first-party claim with their insurer, Defendant Liberty Mutual.

3.3   On July 3, 2018, Plaintiffs filed suit in Lincoln County against the third-party tortfeasors responsible for starting the Hart Fire, Marjorie Kloster and Jeffrey Zimmerman.[1]

3.4   Coincidently, Ms. Kloster and Mr. Zimmerman were also insured by Defendant Liberty Mutual.

3.5   In Plaintiffs' state court matter, Liberty Mutual retained the Law Offices of Kathryn Reynolds Morton to represent both Ms. Kloster and Mr. Zimmerman, who filed a combined Answer and Affirmative Defenses on behalf of Ms. Kloster and Mr. Zimmerman on or around October 11, 2018.

3.6   Curiously, Ms. Kloster's and Mr. Zimmerman's seventh affirmative

---

[1] *Wintersteen v. Klostner et al*, Cause No: 18-2-00064-22

defense asserted that the "Defendants are entitled to offset, setoff, or credit for payments made to or on behalf of Plaintiffs."

3.7   19 months after filing an answer to the Wintersteens' Complaint, Defendant Liberty Mutual retained Fallon McKinley, PLLC to represent Mr. Zimmerman on May 7, 2020.

3.8   On May 12, 2020, Defendant Liberty Mutual retained Bohrnsen Stocker Smith Luciani Adamson PLLC to represent Ms. Kloster.

3.9   Neither Defendant filed an amended or independent answer in the Lincoln County suit.

3.10  On June 25, 2020, Plaintiffs moved for summary judgment dismissal of several of Mr. Zimmerman's and Ms. Kloster's affirmative defenses.

3.11  Also on June 25, 2020, Plaintiffs sent Mr. Zimmerman and Ms. Kloster a separate notice (through their respective counsel) to provide notice that their affirmative defenses 1, 2, 3, 5, and 7 potentially violated CR 11 and that the affirmative defenses should be withdrawn to avoid sanctions.

3.12  On June 30, 2020, Defendant Kloster responded to Plaintiffs' CR 11 Safe-Harbor letter with an explanation of each asserted affirmative defense.

3.13  In Defendant Kloster's June 30, 2020 letter, regarding its seventh affirmative defense asserting an entitlement to "offset, setoff, or credit for

payments made to or on behalf of any Plaintiffs," Defendant Kloster responded:

> In light of ongoing discovery and the fact that Liberty Mutual insures all the parties and has paid all or a substantial portion of your clients' damages, Liberty will likely handle its subrogation right internally.

3.14 Neither Mr. Zimmerman nor Ms. Kloster ever paid Plaintiffs any portion of Plaintiffs' damages.

3.15 Defendant Liberty Mutual had a duty to supervise its claims adjusters regarding Plaintiffs' first-party claim and not allow Mr. Zimmerman, Ms. Kloster, or their counsel to use Plaintiffs' first-party claims file information to assert first-party defenses in a third-party tortfeasor action.

3.16 By allowing Mr. Zimmerman and Ms. Kloster access to Plaintiffs' first-party claims file, Liberty Mutual breached its duty to Plaintiffs by enabling and empowering Mr. Zimmerman and Ms. Kloster to represent Liberty Mutual's first-party interests against its own insured, Mr. and Mrs. Wintersteen.

3.17 Defendant Liberty Mutual intentionally acted against its insureds to reduce Plaintiffs' recovery from the tortfeasors that caused Plaintiffs' total loss.

//

COMPLAINT FOR DAMAGES
AND JURY DEMAND – 10

## SECOND CAUSE OF ACTION: INSURANCE FAIR CONDUCT ACT/CONSUMER PROTECTION ACT

3.18  Plaintiffs re-allege the above paragraphs 1.1 through 3.17 verbatim.

3.19  Liberty Mutual negligently allowed Mr. Zimmerman and Ms. Kloster access to Plaintiffs' first-party claims file so the third-party tortfeasors could assert first-party defenses on behalf of Liberty Mutual in the third-party action.

3.20  Liberty Mutual wrongfully required Mr. and Mrs. Wintersteen to initiate litigation in order to receive an appropriate amount due under their policy. Liberty Mutual's acts and omissions violated several subsections of WAC 284-30 and RCW 48.30 ("IFCA").

3.21  Mr. and Mrs. Wintersteen repeatedly satisfied the requirement of RCW 48.30.015, and this Complaint incorporates the allegations from those notices attached as Exhibits 1 and 2.

3.22  Mr. and Mrs. Wintersteen seek recovery under IFCA and the Consumer Protection Act for all of Liberty Mutual's violations of Washington statutes and common law.

3.23  Defendant Liberty Mutual committed an unfair trade practice when it acted in bad faith, violating WAC 284-30-330, WAC 284-30-360, WAC 284-30-370, and WAC 284-30-380.

COMPLAINT FOR DAMAGES
AND JURY DEMAND – 11

3.24 Plaintiffs' complaint involves their Liberty Mutual policy, which is an insurance contract.

3.25 Defendant Liberty Mutual is engaged in the business of insurance, which is one affected by the public interest.

3.26 Mr. and Mrs. Wintersteen sustained injury to their property, personal injury, and business relationship as a result of Defendant Liberty Mutual's actions.

THIRD CAUSE OF ACTION: BAD FAITH

3.27 Plaintiffs re-allege the above paragraphs 1.1 through 3.26 verbatim.

3.28 Mr. and Mrs. Wintersteen entered a contractual relationship with Defendant Liberty Mutual when they executed their insurance policy with Defendant Liberty Mutual.

3.29 Implied in every insurance contract in Washington State is a duty of good faith and good dealing.

3.30 Defendant Liberty Mutual breached its duty of good faith when it allowed Mr. Zimmerman and Ms. Kloster access to Plaintiffs' first-party insurance claims file.

3.31 Defendant Liberty Mutual breached its duty to its insureds, Mr. and Mrs. Wintersteen, when it failed to deal fairly with the Wintersteens by actively

advocating against them in their suit against Mr. Zimmerman and Ms. Kloster.

3.32 Defendant Liberty Mutual acted in bad faith by trying to use Mr. Zimmerman and Ms. Kloster as a "straw man" to litigate first-party defenses against the Wintersteens.

3.33 Defendant Liberty Mutual's bad faith acts caused damages to Mr. and Mrs. Wintersteen.

3.34 Under Washington law, including but not limited to, *Tank v. State Farm*, 105 Wn.2d 381 (1986), Liberty Mutual is responsible for the attorney fees and costs the Wintersteens incurred due to Liberty Mutual's bad faith acts.

## FOURTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

3.35 A fiduciary or quasi-fiduciary relationship exists between an insurer and its insured.[2]

3.36 An insurer has an enhanced fiduciary obligation that rises to a level higher than that of mere honesty and lawfulness of purpose.[3]

3.37 It requires an insurer to deal fairly with an insured, giving equal

---

[2] *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 791 (2001).

[3] *Id.*

COMPLAINT FOR DAMAGES
AND JURY DEMAND - 13

consideration in all matters to the insured's interests as well as its own.[4]

3.38 Liberty Mutual was not acting in the best interest of the Wintersteens by taking their first-party claims file information and providing it to the Defendants in the Wintersteens' third-party tortfeasor action against Mr. Zimmerman and Ms. Kloster to use for asserting Liberty Mutual's first-party defenses in a third-party action.

3.39 By providing Mr. Zimmerman and Ms. Kloster with the Wintersteens' first-party claims file, Liberty Mutual – as the insurer for Mr. Zimmerman and Ms. Kloster – deliberately acted in the best interest of Liberty Mutual to the detriment of Mr. and Mrs. Wintersteen.

3.40 Defendant Liberty Mutual intentionally supported Mr. Zimmerman and Ms. Kloster in their efforts to deprive Mr. and Mrs. Wintersteen's ability to be made whole after losing all their worldly possessions in a fire.

## FIFTH CAUSE OF ACTION: DECLARATORY RELIEF

**A.     Liberty Mutual does not have a right to Subrogation.**

3.41 Liberty Mutual cannot simultaneously claim a subrogation right to the Wintersteens' recovery from Mr. Zimmerman and Ms. Kloster and deny that Mr. Zimmerman and Ms. Kloster are liable for starting the fire that

---

[4] *Id.*

COMPLAINT FOR DAMAGES
AND JURY DEMAND - 14

destroyed the Wintersteens home, sentimental valuables, and farm animals.

3.42  "The essential elements necessary for legal subrogation . . . are: (1) the existence of a debt or obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights and interests.'[5]

3.43  For Liberty Mutual to assert that it has a subrogation right against the Wintersteens' recovery from Mr. Zimmerman and Ms. Kloster, Liberty Mutual must first demonstrate that Mr. Zimmerman and Ms. Kloster are primarily liable for the fire that destroyed the Wintersteens' home and farm animals.

3.44  Liberty Mutual maintains that neither Ms. Kloster nor Mr. Zimmerman are primarily responsible for the fire that destroyed the Wintersteens' home and farm animals.

3.45  Since Liberty Mutual denies Ms. Kloster and Mr. Zimmerman are liable for the fire, Liberty Mutual cannot satisfy the first element Washington law requires for establishing a subrogation right, as held by the *Livingston*

---

[5] *Livingston v. Shelton*, 85 Wn.2d 615, 618–19, 537 P.2d 774, 776 (1975).

COMPLAINT FOR DAMAGES
AND JURY DEMAND - 15

Court.

3.46 Accordingly, Mr. and Mrs. Wintersteen request this Court issue a judgment establishing that Defendant Liberty Mutual does not have a subrogation right against the Wintersteens' recovery against Mr. Zimmerman and/or Ms. Kloster.

**B.   Liberty Mutual acted in bad faith by using Mr. Zimmerman and Ms. Kloster as a "straw man" to plead first-party defenses in a third-party action and refused to withdraw them.**

3.47 As the Wintersteens' opposing parties in the Lincoln County action, Mr. Zimmerman and Ms. Kloster are actively trying to avoid liability for and limit or eliminate any damages they owe to the Wintersteens, even though the Wintersteens have not been made whole as described in *Thiringer v American Motorists Ins. Co.*, 91 Wn.2d 216, 588 P.2d 191 (1978).

3.48 Defendant Liberty Mutual provided Mr. Zimmerman and Ms. Kloster with the Wintersteens' first-party insurance claims file to aid them in their endeavors to reduce or eliminate damages owed to the Wintersteens and to assert first-party defenses on behalf of Liberty Mutual in the third-party action, even though the Wintersteens have not been made whole as described in *Thiringer v American Motorists Ins. Co.*, 91 Wn.2d 216, 588 P.2d 191 (1978).

3.49  Washington law allows injured insureds to seek damages from liable third-party tortfeasors as well as from their insurer to be made whole from a loss.

3.50  Defendant Liberty Mutual, the Wintersteens insurer, sabotaged the Wintersteens' attempt to be made whole by the third-party tortfeasors responsible for their home and farm animals being completely consumed by the Hart Fire when Liberty Mutual took the Wintersteens' first-party claims file and provided it to the Wintersteens' opposition.

3.51  Since Liberty Mutual also insured Mr. Zimmerman and Ms. Kloster, the only Liberty Mutual  - and not the Wintersteens – benefitted from sharing the Wintersteens' claim-file was Liberty Mutual.

3.52  Liberty Mutual advocated against their own insured's ability to be made whole.

3.53  Because Defendant Liberty Mutual intentionally took action to benefit itself at the detriment of its insured, Defendant Liberty Mutual acted in bad faith in its dealings with Mr. and Mrs. Wintersteen.

3.54  Accordingly, Mr. and Mrs. Wintersteen request this Court issue a judgment establishing that Defendant Liberty Mutual acted in bad faith.

//

//

**C.    Liberty Mutual shared Mr. and Mrs. Wintersteen's first-party claims file with counsel for Mr. Zimmerman and counsel for Ms. Kloster to the detriment of the Wintersteens in the third-party state action.**

3.55   In a letter dated June 30, 2020, Ms. Kloster explained the basis for her seventh affirmative defense by saying, "In light of ongoing discovery and the fact that Liberty Mutual insures all the parties and has paid all or a substantial portion of your clients' damages, Liberty will likely handle its subrogation right internally."

3.56   Plaintiffs never provided Ms. Kloster or Mr. Zimmerman with any first-party claims information for any insurance claim the Plaintiffs ever filed.

3.57   The only way that Ms. Kloster and/or Mr. Zimmerman could know whether Liberty Mutual, "paid all or a substantial portion of [the Wintersteens'] damages is through the Wintersteens' first-party claims file used to assert first-party defense claims in a third-party action.

3.58   Because Liberty Mutual is the custodian of the Wintersteens' first-party claims file and because the Wintersteens did not provide any first-party claims file information with Ms. Kloster or Mr. Zimmerman, only Liberty Mutual can be Ms. Kloster's source of the Wintersteens' first-party claims file information.

3.59   Accordingly, Mr. and Mrs. Wintersteen request this Court issue a judgment establishing that Defendant Liberty Mutual shared the

Wintersteens' first-party claims file information with Ms. Kloster and Mr. Zimmerman.

## IV.  DAMAGES

4.1    Plaintiffs re-allege the above paragraphs 1.1 through 3.59 verbatim.

4.2    Mr. and Mrs. Wintersteen suffered losses to their property and livelihood as detailed above, for which they have not been made whole as described in *Thiringer v American Motorists Ins. Co.*, 91 Wn.2d 216, 588 P.2d 191 (1978).

4.3    Liberty Mutual's decisions to stretch out this litigation for nearly five years prevented the Wintersteens from being able to recover and move on from a devastating loss.

4.4    Liberty Mutual's decisions to hire new counsel as a part of a larger plan to facilitate its plan to advocate against the Wintersteens' rights to be made whole caused the Wintersteens to unnecessarily endure nearly five years of litigation without knowing how their own insurance company would try to sabotage them and their ability to fully recover.

4.5    As a proximate result of Liberty Mutual's acts and omissions, the Wintersteens sustained damages in an amount to be proved at trial.

//

//

COMPLAINT FOR DAMAGES
AND JURY DEMAND – 19

# V.    PRAYER FOR RELIEF

**WHEREFORE**, Mr. & Mrs. Wintersteen, demand judgment against Defendant for an Order granting the following relief:

1. Judgment against Liberty Mutual for the general damages the Wintersteens sustained due to Liberty Mutual's actions and omissions, including those that Liberty Mutual is actively trying to deprive the Wintersteens of in the Lincoln County third-party tortfeasor action;

2. Judgment against Liberty Mutual for the economic and special damages Plaintiffs incurred as a result of its acts and omissions;

3. Judgment against Defendants for pain, suffering, medical bills, and loss of enjoyment of life for the five years and counting;

4. Pre-judgment interest and reasonable attorney's fees and costs as provided by contract, equity, the CPA, and IFCA;

6. Judgment against Defendant Liberty Mutual for Plaintiffs' taxable costs and disbursements incurred herein and for statutory damages and penalties including the tripling of damages as authorized by the CPA, IFCA, or other applicable statute as well as enhanced damages pursuant to RCW 19.86.090, RCW 48.30.010, and *Olympic Steamship v. Centennial Insurance Co.*, 117 Wn2d 37, 811 P.2d 673 (1991);

7.   A declaratory Order from this Court establishing that Defendant Liberty Mutual does not have a subrogation right to Plaintiffs' recovery from Mr. Zimmerman and/or Ms. Kloster pursuant to *Thiringer v American Motorists Ins. Co.*, 91 Wn.2d 216, 588 P.2d 191 (1978) and *Livingston v. Shelton*, 85 Wn.2d 615, 618–19, 537 P.2d 774, 776 (1975);

8.   A declaratory Order from this Court establishing that Defendant Liberty Mutual acted in bad faith by providing the Wintersteens entire first-party claims file to the third-party defendants to assert first-party defenses on behalf of Liberty Mutual;

9.   A declaratory Order from this Court establishing that Mr. and Mrs. Wintersteen have not been made whole through the first-party claim they filed with their insurer, Liberty Mutual; and

10.   For other and further relief as the Court may deem just and proper.

//

//

//

//

//

//

//

COMPLAINT FOR DAMAGES
AND JURY DEMAND – 21

//

DATED this __4th__ day of June 2021.

**BEST LAW PLLC**


___/s/ Ryan Best_____
Ryan M. Best, WSBA 33672
Jacob A. Mark, WSBA 54280
Michael Merkelbach, WSBA 55389
Best Law PLLC
905 W. Riverside, Suite 409
Spokane, WA 99201
Phone: (509) 624-4422
Fax: (509) 703-7957
ryan.best@bestlawspokane.com
jmark@bestlawspokane.com
mike.m@bestlawspokane.com
Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on June <u>4th</u> of 2021, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF System, which in

turn automatically generated a Notice of Electronic Filing (NEF) to:

bfallon@fallonmckinley.com

sstocker@bsslslawfirm.com

pjordan@bssslslawfirm.com

I hereby certify that I have mailed by United States Postal Service the

document to the following at the address listed below:

NONE

**BEST LAW PLLC**

    /s/ Ryan Best
Ryan M. Best, WSBA 33672
Jacob A. Mark, WSBA 54280
Michael Merkelbach, WSBA 55389
Best Law PLLC
905 W. Riverside, Suite 409
Spokane, WA 99201
Phone: (509) 624-4422
Fax: (509) 703-7957
ryan.best@bestlawspokane.com
jmark@bestlawspokane.com
mike.m@bestlawspokane.com
Attorneys for Plaintiffs